IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| AXIOM STRATEGIES, LLC,<br>GARRISON MANAGEMENT GROUP,<br>LLC, and VANGUARD FIELD<br>STRATEGIES, LLC,<br><br>       Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE<br>COMPANY and<br>EVANSTON INSURANCE COMPANY,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br><br>Case No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Axiom Strategies, LLC ("Axiom"), Garrison Management Group LLC ("Garrison Management"), and Vanguard Field Strategies, LLC ("Vanguard") (collectively, "Plaintiffs" or "the Policyholders") submit the following Complaint against Defendants Zurich American Insurance Company ("Zurich") and Evanston Insurance Company ("Evanston") (collectively, "Defendants" or the "Insurance Companies"):

## BACKGROUND

1. This is an insurance coverage action for declaratory relief, breach of contract, common law bad faith, and statutory claims for bad faith and improper claims handling related to the Insurance Companies' vexatious and unjustifiable refusal to honor their coverage obligations. The Policyholders paid substantial premiums to the Insurance Companies for insurance benefits, including a defense, for a lawsuit currently pending in the U.S. District Court for the District of Nevada, *Lex Tecnica v. Vanguard Field Strategies* et al., case number 2:23-cv-00069-APG-EJY (the "Underlying Lawsuit"). The Insurance Companies have mishandled the claim, have

attempted to shift their own burdens of investigation and prompt communication onto the Policyholders while refusing to cooperate with the Policyholders, and have wrongfully denied or failed to acknowledge their coverage obligations, all in breach of the relevant insurance policies and in violation of the Insurance Companies' common law and statutory good faith obligations.

2. The Insurance Companies issued policies that provide coverage for the claims asserted in the Underlying Lawsuit. Specifically, Zurich issued a "Zurich Select Plus" liability insurance policy that includes a Management and Company Liability Coverage Part to Garrison Management, Policy No. MPL 7647590-00, with a policy period of August 7, 2022, to August 7, 2023 (the "Zurich Policy"). A copy of the Zurich Policy is attached as **Exhibit A**. Evanston issued a liability insurance policy that includes a Professional Liability Insurance Coverage Part to Garrison Management, Policy No. MKLV2PEO001138 , with a policy period of August 7, 2022, to August 7, 2023 (the "Evanston Policy") (together with the Zurich Policy, the "Policies"). A copy of the Evanston Policy is attached as **Exhibit B**. Garrison Management is the primary named insured under the Policies and owns both Axiom and Vanguard, which are in turn insureds under the Policies.

3. The Insurance Companies owe the Policyholders defense costs incurred in the Underlying Lawsuit, are liable for the Policyholders' costs incurred in prosecuting this action, and are liable for damages and statutory penalties for the Insurance Companies' bad faith and wrongful claims handling conduct.

**PARTIES, JURISDICTION, AND VENUE**

4. Plaintiff Garrison Management is a Texas Limited Liability Company and has its principal place of business in Kansas City, Missouri. Its only member is a resident of Texas for purposes of diversity jurisdiction.

2

5. Plaintiff Axiom is a Missouri Limited Liability Company and has its principal place of business in Kansas City, Missouri. Its only member is a resident of Texas for purposes of diversity jurisdiction.

6. Plaintiff Vanguard is a Texas Limited Liability Company and has its principal place of business in Texas. Its only member is a resident of Texas for purposes of diversity jurisdiction.

7. Upon information and belief, Defendant Zurich is a corporation organized and existing under the laws of the State of New York and has its principal place of business in the State of Illinois.

8. Upon information and belief, Defendant Evanston is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in the State of Illinois.

9. This Court has personal jurisdiction over Zurich because it regularly conducts and transacts business in the State of Missouri, including with regard to the issues underlying this lawsuit, namely, issuing and delivering the insurance policy at issue to an insured at its Missouri headquarters for risks arising from Missouri business activities, sending wrongful coverage communications to the insureds in Missouri, and committing acts of bad faith directed in part to the insureds in Missouri.

10. This Court has personal jurisdiction over Evanston because it regularly conducts and transacts business in the State of Missouri, including with regard to the issues underlying this lawsuit, namely, issuing and delivering the insurance policy at issue to an insured at its Missouri headquarters for risks arising from Missouri business activities, sending wrongful coverage communications to the insureds in Missouri, and committing acts of bad faith directed in part to the insureds in Missouri.

3

11. The Court has jurisdiction over this dispute under 28 U.S.C. § 1332(a), because Defendants are citizens of different States than Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims in this lawsuit occurred in Jackson County, Missouri.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Zurich Policy

13. The Zurich Policy is branded as a "Zurich Select Plus" liability policy. It contains several coverage parts, including, as most relevant here, a Management and Company Liability part.

14. The Management and Company Liability coverage part of the Zurich Policy has a liability limit of $1,000,000.

15. The Management and Company Liability part, among other things, obligates Zurich to pay "Loss" on behalf of a "Company," where the "Loss" is on account of a "Claim" for "Wrongful Acts" made during the policy period.

16. A "Company" includes the named insured Garrison Management and its "Subsidiaries," defined in part to include any organization controlled by Garrison Management or its subsidiaries, such as through voting rights or appointment rights.

17. A "Claim" includes a civil proceeding brought against any insured for a "Wrongful Act." In turn, a "Wrongful Act" includes any error, misstatement, misleading statement, act, omission, neglect, and breaches of duties actually or allegedly committed by an insured.

4

18. "Loss" includes amounts an insured becomes legally obligated to pay on account of "Claims" for "Wrongful Acts," including judgments, interest, settlements, damages, and "Defense Costs" such as attorney fees.

19. Zurich has a duty to defend potentially covered claims under the Zurich Policy.

**The Evanston Policy**

20. The Evanston Policy includes several coverage parts, including, as most relevant here, a Professional Liability part.

21. The Professional Liability coverage part has liability limits of $2,000,000 per claim and $4,000,000 in the aggregate.

22. The Professional Liability part, among other things, obligates Evanston to pay all sums that the "Insureds" become legally obligated to pay as "Damages" and "Claim Expenses" incurred as a result of a "Claim" first made during the policy period by reason of a "Wrongful Act."

23. The Evanston Policy defines "Insured" to include Garrison Management as the named insured (along with additional named insureds) as well as its "Subsidiaries," defined in part to include any organization controlled by Garrison Management or its subsidiaries, such as through voting rights or appointment rights.

24. "Damages" and "Claim Expenses" are defined to include defense costs like attorney fees and the monetary portion of any judgment, award, or settlement.

25. A "Claim" includes the service of suit against an Insured.

26. "Wrongful Act" includes any negligent act, error, or omission in "Professional Services." In turn, the "Professional Services" identified in the declarations include "Direct Mailing Including Campaign" and "Public Affairs."

5

27. Evanston has a duty to defend potentially covered claims under the Evanston Policy.

**The Underlying Lawsuit**

28. During the policy periods of the Policies, on January 12, 2023, the Underlying Lawsuit was filed in the U.S. District Court for the District of Nevada, styled as *Community Schools Initiative v. Vanguard Field Strategies, LLC,* et al., case no. 2:23-cv-00069-APG-EJY. The initial Complaint was brought against Vanguard, 100 unidentified Doe individuals, and another 100 unidentified Roe business entities. A copy of the original Complaint in the Underlying Lawsuit is attached as **Exhibit C**.

29. The First Amended Complaint in the Underlying Lawsuit was filed on March 20, 2023. The First Amended Complaint continued to name Vanguard and unidentified parties as defendants while adding Jeff Roe, "Axiom, LLC dba Axiom Strategies," and Garrison. A copy of the First Amended Complaint in the Underlying Lawsuit is attached as **Exhibit D**.

30. The Second Amended Complaint in the Underlying Lawsuit was filed on May 8, 2023. The Second Amended Complaint names Vanguard, Axiom (with the same misnomer), and 200 unidentified parties as defendants. A copy of the Second Amended Complaint in the Underlying Lawsuit is attached as **Exhibit E**.

31. The Third Amended Complaint in the Underlying Lawsuit was filed on February 16, 2024. The Third Amended Complaint names Vanguard, Axiom (with the same misnomer), and 200 unidentified parties as defendants. A copy of the Third Amended Complaint in the Underlying Lawsuit is attached as **Exhibit F**.

32. The Third Amended Complaint lists seven causes of action, titled: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Unjust

6

Enrichment—In the Alternative; (4) Fraudulent Inducement; (5) Fraudulent Misrepresentation/Fraud; (6) Negligent Misrepresentation—In the Alternative; and (7) Deceptive Trade Practices.

33. On June 25, 2025, the court in the Underlying Lawsuit entered a pretrial order, setting the case for a jury trial on November 17, 2025.

34. The pleadings in the Underlying Lawsuit trigger the Insurance Companies' duties to defend the Policyholders—presently, in terms of Vanguard and Axiom, and previously, when Jeff Roe and Garrison Management were named defendants in the case.

**Zurich's Wrongful Denial of Coverage**

35. The Policyholders promptly notified Zurich of the claim, and, on April 27, 2023, Zurich sent the then CFO of Axiom an acknowledgement.

36. The claims professional managing the claim for Zurich, Candice Blain, emailed Nick Schulte (then the CFO of Axiom) the next day to initiate correspondence about the claim.

37. After initial correspondence about the claim between Blain and Schulte, Zurich ceased communicating with its insureds about the matter.

38. Fast forward to April 2025, nearly two years after the initial acknowledgement, and Zurich still had not provided a coverage position. As such, the insureds reached out and requested a coverage position.

39. On April 18, 2025, Zurich denied coverage as to Garrison Management under the First Amended Complaint in the Underlying Lawsuit. A copy of the denial letter is attached as **Exhibit G**.

40. Zurich's denial letter generally takes the position that there would be coverage but for certain exclusions. Zurich then noted that its "coverage investigation [was] ongoing" despite

the denial, and Zurich invited the Policyholders to submit any additional materials for Zurich's consideration if the Policyholders believed the denial was in error.

41.     On May 23, 2025, the Policyholders provided a response letter to Zurich, submitting additional materials and considerations for Zurich and urging it to reverse its wrongful coverage denial.

42.     Blain, the claims professional for Zurich, responded that same day, confirming her receipt and stating that Zurich would "review the materials" and respond "as soon as possible."

43.     As of this filing, nearly three months later, Zurich has still not responded.

**Evanston's Wrongful Effective Denial of Coverage by Silence and Inaction**

44.     The Policyholders promptly notified Zurich of the claim, and, on April 28, 2023, the claims professional then assigned to the claim, Shawna Bishop, provided an acknowledgment letter and explained that she was "reviewing the matter for coverage[.]"

45.     Over the next two weeks, Bishop and Schulte (the then-CFO of Axiom) corresponded back and forth and coordinated a phone call to discuss the matter.

46.     On May 5, 2023, Bishop asked Schulte for the contact information for defense counsel in the Underlying Lawsuit, noting: "Evanston has a duty to defend policy and I would like confirmation in my file that this matter is presently being defended by counsel."

47.     On May 31, 2023, Bishop emailed Schulte to follow up on the status of litigation and asked about scheduling a call to discuss coverage. Schulte responded the next day and updated Bishop on the status of litigation.

48.     On June 5, 2023, Bishop responded by email, saying that Evanston could not make a coverage determination, and then noting that Evanston was unilaterally opting to treat its

primary-layer policy as an excess policy. Bishop did not indicate what information Evanston was still seeking.

49. At some point, Bishop ceased being the assigned claims handler, and a new claims professional, Victoria Sanchez, was assigned the claim.

50. After inquiry from the Policyholders, Sanchez responded, in essence, that she did not know what the status of the coverage analysis was and did not know what had happened with the claim.

51. Over the next roughly four months, the Policyholders attempted to get a coverage position from Evanston. Evanston has failed to provide one and has still failed, despite repeated requests, to indicate what information it believes it needs to provide a coverage position.

**The Wrongful Denials Significantly Harm the Policyholders**

52. The Policyholders complied with all conditions precedent to recovery under the Policies. The Policyholders also paid very substantial premiums in exchange for the Insurance Companies' agreements under the Policies. Nonetheless, the Insurance Companies have refused to provide any coverage to or otherwise honor their obligations to the Policyholders with respect to the Underlying Lawsuit.

53. The Insurance Companies' actions have put the Policyholders in a precarious position. The Policyholders purchased a comprehensive insurance program to manage risks like those presented in the Underlying Lawsuit. The Policyholders put their trust in the Insurance Companies and their contractual assurances, only to be put into an impossible position where those same Insurance Companies are willfully ignoring the potential for coverage presented in the Underlying Lawsuit, refusing to acknowledge the requests of the Policyholders, wrongfully deeming themselves to be excess policies without immediate obligations, and, ultimately, forcing

9

the Policyholders to continue to defend themselves even to the brink of trial while looking out only for the Insurance Companies' own interests. These wrongful actions have caused the Policyholders to sustain significant losses that the Policyholders are now forced to initiate this litigation to recover.

## Count I
### Declaratory Judgment – Duty to Defend (Against Zurich)

54. Plaintiffs incorporate all prior allegations in this Complaint as if set forth in full in this paragraph.

55. There is an actual controversy between Plaintiffs and Zurich because Zurich has wrongfully construed Zurich Policy and the law and wrongfully denied coverage.

56. Accordingly, under 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of the parties.

57. Among other things, the Zurich Policy obligates Zurich to defend the Policyholders in the Underlying Lawsuit.

58. The Underlying Lawsuit constitutes a "Claim" first made during the policy period for alleged "Wrongful Acts," including alleged errors, misstatements, misleading statements, acts, omissions, neglects, and breaches of duties allegedly committed by insureds.

59. Zurich has wrongfully contended that it has no coverage obligations.

60. In doing so, Zurich has negligently, recklessly, and in bad faith, breached its duty to defend as set forth in the Zurich Policy sold to Plaintiffs. Specifically, Zurich has, without limitation:

    a. Failed to conduct a proper investigation into coverage for the Underlying Lawsuit;

    b. Wrongfully issued a coverage denial that is objectively baseless;

c. Refused to provide any reasonable interpretation to the provisions in the Zurich Policy;

d. Failed to provide the Policyholders with a legitimate explanation of Zurich's coverage position;

e. Failed to acknowledge and timely respond to pertinent communications from the Policyholders as Zurich was obligated under the Zurich Policy and applicable law;

f. Repudiated its obligation to defend the Policyholders or to otherwise pay for covered losses, including those already incurred and will continue to be incurred in defense, as well its obligations to cover a settlement or a judgment;

g. Refused to pay the Policyholders' costs incurred to date in defense of the Underlying Lawsuit.

61. For each of these enumerated reasons, Zurich has rejected, repudiated, and breached its duty to defend the Policyholders.

62. As a direct and proximate result of these breaches, the Policyholders are entitled to a declaration that Zurich is obligated under the Zurich Policy to defend the Policyholders and to pay for all costs incurred by the Policyholders in defense of the Underlying Lawsuit in excess of the retention.

## Count II
### Declaratory Judgment – Duty to Defend (Against Evanston)

63. Plaintiffs incorporate all prior allegations in this Complaint as if set forth in full in this paragraph.

64. There is an actual controversy between Plaintiffs and Evanston because Evanston has breached its duty to defend Plaintiffs and has refused to acknowledge its coverage obligations under the Evanston Policy.

65. Accordingly, under 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of the parties.

66. Among other things, the Evanston Policy obligates Evanston to defend the Policyholders in the Underlying Lawsuit.

67. The Underlying Lawsuit constitutes a "Claim" first made during the policy period and is premised on alleged "Wrongful Acts," including alleged negligent acts, errors, and omissions in "Professional Services," including "Public Affairs" professional services.

68. Despite timely notice from the Policyholders and repeated requests for Evanston's involvement, Evanston has wrongfully refused to explain its coverage position and refused to honor or acknowledge its obligation to cover the Policyholders for the Underlying Lawsuit.

69. In doing so, Evanston has negligently, recklessly, and in bad faith, breached its duty to defend as set forth in the Evanston Policy sold to Plaintiffs. Specifically, Evanston has, without limitation:

    a. Failed to conduct a proper investigation into coverage for the Underlying Lawsuit;

    b. Wrongfully refused to provide a coverage position or an explanation for its refusal to provide a coverage position;

    c. Refused to provide any reasonable interpretation to the provisions in the Evanston Policy;

    d. Failed to provide the Policyholders with a legitimate explanation of Evanston's coverage position;

    e. Failed to acknowledge and timely respond to pertinent communications from the Policyholders as Evanston was obligated under the Evanston Policy and applicable law;

12

f.  Repudiated by silence and inaction its obligation to defend the Policyholders or to otherwise pay for covered losses, including those already incurred and that will continue to be incurred in defense, as well its obligations to cover a settlement or a judgment;

g.  Failed and effectively refused to pay the Policyholders' costs incurred to date in defense of the Underlying Lawsuit.

70.  For each of these enumerated reasons, Evanston has rejected, repudiated, and breached its duty to defend the Policyholders.

71.  As a direct and proximate result of these breaches, the Policyholders are entitled to a declaration that Evanston is obligated under the Evanston Policy to defend the Policyholders and to pay for all costs incurred by the Policyholders in defense of the Underlying Lawsuit in excess of the deductible.

**Count III**
**Breach of Contract—Zurich Policy (Against Zurich)**

72.  Plaintiffs incorporate by reference all prior allegations in this Complaint as if set forth in full in this paragraph.

73.  Among other things, the Zurich Policy obligates Zurich to defend the Policyholders in the Underlying Lawsuit.

74.  Zurich has wrongfully contended that it has no coverage obligations.

75.  Zurich breached its obligations as set forth in the Zurich Policy sold to the Policyholders when it committed the acts described and set forth above in Paragraphs 56-58.

76.  As a direct and proximate result of these breaches, the Policyholders have suffered damages and will continue to be damaged in excess of $75,000 arising from their costs and fees incurred and to be incurred in defending the Underlying Lawsuit, together with the costs and

13

disbursements of this action, including, but not limited to, reasonable attorney fees and costs, pre- and post-judgment interest, and other consequential damages, arising out of Zurich's failure to honor its obligations under the terms of the Zurich Policy.

<u>**Count IV**</u>
**Breach of Contract—Evanston Policy (Against Evanston)**

77. Plaintiffs incorporate by reference all prior allegations in this Complaint as if set forth in full in this paragraph.

78. Among other things, the Evanston Policy obligates Evanston to defend the Policyholders in the Underlying Lawsuit.

79. Evanston has wrongfully failed to acknowledge, honor, or discharge its coverage obligations to the Policyholders.

80. Evanston breached its obligations as set forth in the Evanston Policy sold to the Policyholders when it committed the acts described and set forth above in Paragraphs 64-66.

81. As a direct and proximate result of these breaches, the Policyholders have suffered damages and will continue to be damaged in excess of $75,000 arising from their costs and fees incurred and to be incurred in defending the Underlying Lawsuit, together with the costs and disbursements of this action, including, but not limited to, reasonable attorney fees and costs, pre- and post-judgment interest, and other consequential damages, arising out of Evanston's failure to honor its obligations under the terms of the Evanston Policy.

<u>**Count V**</u>
**Common Law Bad Faith (Against Both Defendants)**

82. Plaintiffs incorporate by reference all prior allegations in this Complaint as if set forth in full in this paragraph.

Case 4:25-cv-00659-DGK    Document 1    Filed 08/20/25    Page 14 of 21

83.     The Insurance Companies owe the Policyholders contractual and legal duties of good faith, including obligations to act faithfully, truthfully, without negligence, and with at least equal consideration for the interests of the Policyholders.

84.     The Insurance Companies have negligently, recklessly, and in bad faith, breached the obligations as set forth in the Policies and attendant legal and contractual obligations when, without limitation, the Insurance Companies:

   a.   Unreasonably failed or refused to accept coverage for the claim, including the Insurance Companies' defense obligations;

   b.   Denied coverage for the claim without a reasonable basis, refused to accord any reasonable interpretation to the provisions in the Policy, and refused to accord any reasonable application of such provisions to the claim;

   c.   Wrongfully denied coverage based on defenses or provisions that are not contained in or supported by the Insurance Policies;

   d.   Failed or refused to defend or pay without conducting a reasonable investigation;

   e.   Failed to consider all relevant information in their possessions to establish coverage for the claim;

   f.   Failed to provide an adequate ground for denial of the claim;

   g.   Failed to acknowledge or act reasonably promptly with respect to the claim;

   h.   Compelled the Policyholders to institute litigation to recover amounts due under the Insurance Policies;

   i.   Misrepresented pertinent facts or insurance policy provisions relating to coverages at issue;

   j.   Failed to effectuate prompt, fair, and equitable settlements of claims; and

k. Failed to promptly provide any reasonable explanation of the basis in the Insurance Policies in relation to the facts or applicable law for denying coverage or for failing to provide a coverage position or provide a defense.

85. For at least each of the reasons enumerated in the foregoing paragraph, the Insurance Companies have rejected, repudiated, and breached their obligations of good faith to the Policyholders.

86. As a direct and proximate result of these breaches, the Policyholders have been damaged in excess of $75,000 for all costs and fees incurred and to be incurred in defense of the Underlying Lawsuit, together with the costs and disbursements of this action, including, but not limited to, reasonable attorney fees and costs, pre- and post-judgment interest, and other consequential damages arising out of the Insurance Companies' failure to honor their obligations under the terms of the Policies.

**<u>Count VI</u>**
**Vexatious Refusal to Pay, RSMo §§ 375.296 and 375.420 (Against Both Defendants)**

87. Plaintiffs incorporate by reference all prior allegations in this Complaint as if set forth in full in this paragraph.

88. The Insurance Companies have refused and continue to refuse to accord any reasonable interpretation to the provisions in the Policies and have refused and continue to refuse to accord any reasonable application of such provisions to the Policyholders' requests for coverage in the Underlying Lawsuit.

89. In so refusing, the Insurance Companies have acted to protect their own financial interests in disregard of the interests of their insureds.

16

90. The Insurance Companies owe the Policyholders duties of good faith and fair dealing and have breached these duties, including but not limited to engaging in the following acts:

a. Unreasonably failing or refusing to accept coverage for the claim, including the Insurance Companies' defense obligations;

b. Denying coverage for the claim without a reasonable basis, refusing to accord any reasonable interpretation to the provisions in the Policy, and refusing to accord any reasonable application of such provisions to the claim;

c. Wrongfully denying coverage based on defenses or provisions that are not contained in or supported by the Insurance Policies;

d. Failing or refusing to pay without conducting a reasonable investigation;

e. Failing to consider all relevant information in its possession to establish coverage for the claim;

f. Failing to provide an adequate ground for denial of the claim;

g. Failing to acknowledge and act reasonably promptly with respect to the claim;

h. Compelling the Policyholders to institute litigation to recover amounts due under the Insurance Policies;

i. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

j. Failing to effectuate prompt, fair, and equitable settlements of claims;

k. Failing to provide promptly a reasonable explanation of the basis in the Insurance Policies in relation to the facts or applicable law for denial of coverage;

l. Failing to appear and defend the Underlying Lawsuit; and

17

m. Engaging in other "improper or unfair claims settlement practices" prohibited by RSMo §§ 375.1000 to 375.1018 and as further detailed by the Missouri Department of Insurance in 20 CSR 100.010 *et seq*.

91. The headquarters of Plaintiff Axiom and Plaintiff Garrison Management are each located in the State of Missouri, and the Policies were delivered to those Policyholders in the State of Missouri.

92. Pursuant to Missouri Revised Statutes Sections 375.296 and 375.420, this Court has the statutory authority to impose additional damages and award attorneys' fees to the Policyholders.

93. As a result of the Insurance Companies' wrongful conduct, including but not limited to as described above, the Insurance Companies are liable to the Policyholders for attorneys' fees in this case and other costs and additional damages pursuant to Missouri Revised Statutes Sections 375.296 and 375.420.

<u>**Count VIII**</u>
**Unfair or Deceptive Acts and Practices in Violation of the Texas Insurance Code (Against Both Defendants)**

94. Plaintiffs incorporate by reference all prior allegations in this Complaint as if set forth in full in this paragraph.

95. Plaintiff Vanguard is a Texas Limited Liability Company, and Vanguard experienced the effects of the Insurance Companies' wrongful conduct in the State of Texas.

96. The conduct of the Insurance Companies, including as described in this Complaint, violated Tex. Ins. Code § 541.001 *et seq.* and § 542.003.

97. The Insurance Companies' conduct constitutes unfair or deceptive acts or practices in the business of insurance prohibited by Tex. Ins. Code § 541.001 *et seq.,* Tex. Ins. Code § 542.003, and rules and regulations addressed by the State Board of Insurance.

18

98.    The Insurance Companies violated the foregoing provisions in the following particulars, among others:

a.  Unreasonably failing or refusing to accept coverage for the claim, including the Insurance Companies' defense obligations;

b.  Denying coverage for the claim without a reasonable basis, refusing to accord any reasonable interpretation to the provisions in the Policy, and refusing to accord any reasonable application of such provisions to the claim;

c.  Wrongfully denying coverage based on defenses or provisions that are not contained in or supported by the Insurance Policies;

d.  Failing or refusing to pay without conducting a reasonable investigation;

e.  Failing to consider all relevant information in its possession to establish coverage for the claim;

f.  Failing to provide an adequate ground for denial of the claim;

g.  Failing to acknowledge and act reasonably promptly with respect to the claim;

h.  Compelling the Policyholders to institute litigation to recover amounts due under the Insurance Policies;

i.  Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

j.  Failing to effectuate prompt, fair, and equitable settlements of claims;

k.  Failing to provide promptly a reasonable explanation of the basis in the Insurance Policies in relation to the facts or applicable law for denial of coverage;

l.  Failing to appear and defend the Underlying Lawsuit; and

m. Engaging in other acts prohibited by Tex. Ins. Code § 541.001 *et seq.,* Tex. Ins. Code § 542.003, and rules and regulations addressed by the State Board of Insurance.

99. The Insurance Companies' violations have caused, and will continue to cause, damages to the Policyholders.

100. On information and belief, the Insurance Companies committed the foregoing unlawful acts and practices knowingly as defined in Section 541.002 of the Texas Insurance Code and have demonstrated actual conscious indifference to the rights and welfare of the Policyholders, entitling the Policyholders to multiple damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for the Court to enter a judgment against Defendants and in favor of Plaintiffs:

a. declaring Defendants are obligated under the Insurance Policies to defend Plaintiffs in the Underlying Lawsuit;

b. awarding Plaintiffs their actual damages, including consequential damages, in an amount well in excess of $75,000, with the full amount to be determined at or before trial;

c. awarding Plaintiffs all costs and fees associated with the initiation and prosecution of this action including, but not limited to, Plaintiffs' attorney fees;

d. awarding Plaintiffs an amount representing an appropriate penalty against each Defendant for Defendants' wrongful, malicious, and vexatious conduct;

e. awarding Plaintiffs pre- and post-judgment interest; and

f.  granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**GRAVES GARRETT GREIM LLC**

By: _/s/ Chandler E. Carr_
J. Aaron Craig, MO #62041
Chandler E. Carr, MO #68836
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
acraig@gravesgarrett.com
ccarr@gravesgarrett.com

Attorneys for Plaintiffs